John Stanley MARSH, Appellant,

v.

F. M. ASHBY, Appellee.

Court of Appeals of Kentucky.

June 26, 1964.

Rehearing Denied Sept. 25, 1964.

Ben T. Cooper, Mayer, Cooper & Kiel, Louisville, for appellant.

Rhodes Bratcher, Bratcher, Rummage & Beard, Owensboro, for appellee.

CHARLES M. ALLEN, Special Commissioner.

This is an appeal from a judgment upon a jury verdict directed by the trial court

awarding the plaintiff $2,500 under the terms of an insurance policy insuring the life of a thoroughbred horse named "Real Country." The trial court after hearing the evidence for the plaintiff overruled a motion for a directed verdict made by the appellant and upheld the appellee's motion for a directed verdict. Appellant insists that the trial court should have directed a verdict for it, and appellee has filed a cross-appeal contending that the trial court should have directed a verdict for it for $3,000 instead of $2,500.

The insurance policy in question is a Lloyd's Livestock Policy. The term of the policy is from April 11, 1961 through April 11, 1962. The insuring clause provides as follows:

"Now We the Underwriters hereby agree, to the extent and in the manner hereinafter provided, that in the event of the death during the period of this Policy of any animal specified in the Schedule we will indemnify the Assured in respect of the actual value of such animal at the time of the accident (or the manifestation of the disease or illness) causing its death, up to but not exceeding the limit of the Underwriters' liability specified in the Schedule in respect of such animal."

The policy contained a 30 day extension clause which provided that the insurance covered the death of any animal occurring within 30 days after April 11, 1962 as a result of any accident, disease, or illness occurring during the period of the insurance.

Exclusion No. 1 of the policy reads as follows:

"1. This Policy does not cover intentional slaughter, except that the Underwriters will not invoke this particular Exclusion as a defence where the Underwriters shall have expressly agreed to the destruction of the animal, or where a Veterinary Surgeon appointed by the Underwriters shall first have given a certificate that destruction is necessary to terminate incurable suffering, or where a certificate is given by a qualified Veterinary Surgeon appointed by the Assured that the suffering is incurable and so excessive that immediate destruction is imperative for humane reasons without waiting for the appointment of a Veterinary Surgeon by the Underwriters; provided that in all such cases the Underwriters shall be given the opportunity of having a post-mortem examination carried out by their Veterinary Surgeon should they so desire."

The horse, Real Country, was injured on April 5, 1962 at Fairmont Park, Collinsville, Illinois. It suffered a fracture of the navicular bone of its right foot. Notice was given to the insurer on April 6, 1962 of the fact that the horse had been injured. On April 9, 1962 the insurer was notified that the veterinarian at Fairmont Park had x-rayed the injured horse, and that the navicular bone was broken. The horse had been examined on April 5 by both Dr. Brown, the veterinarian for the track, and by Dr. Butzow, who apparently acted on behalf of appellant. Dr. Butzow took the x-rays which revealed the fracture of the navicular bone.

On May 17, 1962, Drs. Brown and Kern wrote plaintiff stating that Real Country's original injury, to-wit, the fractured navicular bone in the right foot, had developed complications from which there was no cure. They stated that a neurectomy was performed in order to decrease the pain, but that this proved ineffective, and that the horse should have been euthenized.

The horse was not ordered from the track until May 16 or May 17, 1962 and was then taken to a farm near Benton, Illinois where it remained until August 3, 1962. It was then removed to appellee's farm where it remained until March of 1963 when it was destroyed.

The appellee's cause of action is predicated upon the theory that the appellant

arbitrarily withheld its consent to the intentional slaughter of Real Country. This theory is based on the holding of the United States District Court for the Eastern District of Pennsylvania in the case of Rosen v. Underwriters, 100 F.Supp. 825. In that case the court overruled the motion of the insurer to dismiss the complaint where it was alleged that the insured horse, "Palatine King", was injured some three weeks prior to the expiration of the policy in such a way as to require immediate destruction, and that the withholding of consent by the insurer was arbitrary, deliberate, and with the sole purpose of prolonging the life of the animal beyond the term of the policy. The policy in that case provided that there was no liability for the intentional slaughter of an animal unless the slaughter was with the consent of the insurers' veterinarian.

In the case at bar the policy permits intentional slaughter under three alternatives, the third of which provides that when a certificate is given by a qualified veterinary surgeon appointed by the assured that suffering is incurable and so excessive that immediate destruction is imperative without waiting for the appointment of a veterinary surgeon by the underwriters, then the insurance benefits may be recovered.

In this case there does not appear to be any probative evidence that the insurer arbitrarily withheld its consent to the destruction of the animal. All that is shown is the examination of the horse during the term of the policy and the fracture of its navicular bone. None of the three conditions imposed by the Exclusion Section were met during the period of the policy or even during the period as extended by the 30 days extension clause. It is true that the veterinarians who testified on behalf of the appellant, Drs. Brown and Kern, were of the opinion that the horse should have been destroyed, but this opinion was not rendered until more than 30 days after the expiration of the insurance policy. Appellee's own action in having the horse treated for a period of eleven months after its injury indicates very clearly that he was hoping that the injury suffered by the horse was not of such a serious nature as to warrant its destruction.

Since the appellee did not bring himself within the three exceptions to Section 1 of the Exclusions and did not prove any arbitrary or fraudulent withholding of consent by the appellant to the destruction of Real Country, the trial court was in error in directing a verdict for the appellee. The judgment is reversed and the case remanded for a new trial with directions that in the event the evidence is substantially the same as on the first trial, then a directed verdict should be given for the appellant.

The cross-appeal of the appellant is without merit. The policy in question provides no benefits other than $2,500 life feature. The trial judge was correct in not allowing the appellee to recover for the expense of feeding and caring for the horse during the period of its illness.

It is our opinion that the judgment should be reversed and remanded for new trial on appeal and affirmed on cross-appeal.

The opinion is approved by the Court and the judgment is reversed to the extent indicated herein with directions to grant a new trial for proceedings not inconsistent with this opinion.